UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brent A. Ristow,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Douglas R. Peterson, Thomas H. Boyd, Juan G. Hoyos, John M. Koneck, Mark S. Kuppe, Shawne M. Monahan, Cheryl M. Prince, Pamela A. Thein, Timothy Y. Wong, Carol Martens, Erin C. Wacker, Natasha Karn, Karen McGillic, and Amanda Cunningham,<br><br>　　　　　Defendants. | Case No. 21-cv-02405 (SRN/DTS)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Brent A. Ristow, 1027 Ottawa Avenue, West Saint Paul, MN 55118, Pro Se.

Joseph D. Weiner, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, Saint Paul, MN 55101, for Defendants Douglas R. Peterson, Thomas H. Boyd, Juan G. Hoyos, John M. Koneck, Mark S. Kuppe, Shawne M. Monahan, Cheryl M. Prince, Pamela A. Thein, Timothy Y. Wong, Carol Martens, Erin C. Wacker, Natasha Karn, Karen McGillic, and Amanda Cunningham.

Julie R. Benfield, Trial Group North, 302 West Superior Street, Suite 800, Duluth, MN 55802, for Defendant Amanda Cunningham.

SUSAN RICHARD NELSON, United States District Judge

　　　This matter is before the Court on the Motions to Dismiss [Doc. Nos. 23, 41] filed by Defendants Douglas R. Peterson, Thomas H. Boyd, Juan G. Hoyos, John M. Koneck, Mark S. Kuppe, Shawne M. Monahan, Cheryl M. Prince, Pamela A. Thein, Timothy Y. Wong, Carol Martens, Erin C. Wacker, Natasha Karn, and Karen McGillic. Also before

1

the Court are the Motions to Dismiss [Doc. Nos. 30, 48] filed by Defendant Amanda Cunningham. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** in part and **DENIES** as moot in part the motions.

## I. BACKGROUND

This case arises from the denial of Plaintiff Brent Ristow's application for admission to the Minnesota Bar by the Minnesota Board of Law Examiners (the "Board"). Ristow brings this lawsuit against (a) certain members of the Board, (b) Karen McGillic, the attorney who represented the Board during the hearing, and (c) Amanda Cunningham, a witness.

### A. Factual Background

Ristow graduated from law school in May of 2014. (Compl. Ex. A [Doc. No. 1-2] ("Final Decision") at 1.) He passed the Minnesota State Bar Examination in July of that same year, but the Board denied his admission to the Minnesota Bar for failing to prove good character and fitness to practice law. (*Id.* at 2-5.) In its ruling issued on September 2, 2015, the Board emphasized that, if Ristow were to reapply for admission to the Minnesota Bar, he must produce evidence of changed behavior. (*Id.* at 6.)

On December 1, 2017, Ristow reapplied for admission to the Minnesota Bar. (Am. Compl. [Doc. No. 38] ¶ 8.) The Board confirmed that his application had been received and that the online application portal had been opened. (*Id.* ¶ 10.) For a second time, he sat for the Minnesota State Bar Examination in February of 2018. (*Id.* ¶ 11.)

Before learning whether he had passed the exam, the Board communicated with Ristow by means of the online portal in regards to its character and fitness evaluation. (*Id.*

¶¶ 12-15.) They requested that Ristow provide information regarding a recently filed Minnesota state-court lawsuit, in which he was the defendant. (*Id.*) Ristow stated that the lawsuit involved his former girlfriend, Defendant Cunningham, explaining as follows:

> Ms. Cunningham was not happy when I ended our relationship and was aware of my status with the MN BLE. I consider this suit an attempt to harass me and interfere with my character and fitness review by the MN BLE.

(*Id.* ¶ 15.)

On April 16, 2018, the Board informed Ristow that he had passed the bar examination, but that it had not reached an admission decision because it was still conducting its character and fitness evaluation. (*Id.* ¶ 16.) Over the next several months, the Board requested additional information from Ristow relating to various issues. (*Id.* ¶¶ 17-18.)

On October 4, 2018, as part of its investigation, Defendant Wacker contacted Cunningham on the telephone to discuss the Minnesota lawsuit. (*Id.* ¶ 19.) Cunningham stated that Ristow "had threatened to kill [her] on two occasions." (*Id.* ¶ 20.) At Wacker's request, Cunningham then submitted a sworn affidavit to the Board, accusing Ristow of "alcohol and drug abuse" and "financial disrepute," and that he had "threatened to kill [her] on two occasions." (*Id.* ¶¶ 20, 23.) The Board did not inform Ristow about these accusations. (*Id.* ¶¶ 22, 29.)

On February 12, 2019, the Board denied Ristow's application to the Minnesota Bar. (*Id.* ¶ 31; *see generally* Compl. Ex. G [Doc. No. 1-8] ("Denial").) The Board was concerned about Ristow's lack of truthfulness during the application process, emphasizing his lack of honesty regarding his tax obligations. (Denial at 9-10.) It also expressed

3

concern about his litigation tactics used to avoid payment of his medical debts. (*Id.* at 7-9.) Given these and other concerns, the Board concluded that Ristow had "[f]ailed to provide evidence of reform and rehabilitation from a pattern of misconduct, false statements and misrepresentations, and ha[d] failed to meet [his] burden of showing good character and fitness to be admitted to the Bar of Minnesota." (*Id.* at 9-10.) Ristow appealed this determination. (Am. Compl. ¶ 32; *see* Denial at 10.)

On July 16, 2019, the Board held a hearing.[1] (Am. Compl. ¶ 40.) At this hearing, Ristow had the opportunity to be represented by counsel. (Denial at 1.) He also had the opportunity to "present witnesses, offer additional documentary evidence not already in the Board's file, and offer [his] personal testimony." (*Id.*) Ristow attended the hearing, asked questions, and confronted Cunningham about her allegations in the affidavit. (*Id.* ¶¶ 40, 48, 50; *see generally* Affidavit of Brent A. Ristow [Doc. No. 57] ("Ristow Aff.") Ex. L ("Tr.").) During the hearing, the Board and McGillic also asked questions that Ristow alleges were based on information gleaned from an inappropriate internet search outside the record. (Am. Compl. ¶¶ 42-44; Tr. at 45-67.) Ristow's father also testified. (Final Decision at 37-38.)

The Board again denied Ristow's application on October 29, 2019. (Am. Compl. ¶ 45; Final Decision at 39.) The Board found that Ristow had made false statements on his tax filings. (Final Decision at 36.) The Board also found that he had purposely avoided

---

[1] At some point, Ristow learned about Cunningham's affidavit and moved to exclude it from the hearing. His request was denied. (*See* Am. Compl. ¶¶ 33-37.)

4

paying his medical expenses by using questionable "hide and seek" tactics. (*Id.* at 36-37.) The Board further found that Ristow had misled Cunningham and others concerning his authority to practice law and had negotiated a contract as an unlicensed lawyer. (*Id.* at 37; Am. Compl. ¶ 46.) In addition, the Board found that Ristow had avoided repaying Cunningham for a car loan and that he had used motion practice to harass her. (Final Decision at 37.) Lastly, the Board noted concerns arising from the testimony of Ristow's father, including Ristow's unauthorized personal use of his grandmother's savings. (*Id.* at 37-338.) Accordingly, the Board affirmed its prior determination that Ristow had not demonstrated good character and fitness to practice law in Minnesota and thus denied his request for admission. (*Id.* at 39; Am. Compl. ¶ 45.)

B.  **Procedural History**

On October 29, 2021, Plaintiff commenced this lawsuit by filing the Complaint [Doc. No. 1]. In response, Defendants filed motions to dismiss. Plaintiff timely filed the Amended Complaint.[2]

In the Amended Complaint, Ristow asserts eleven counts against Defendants under 42 U.S.C. §§ 1983 and 1985 for alleged violations of his constitutional rights. (Am. Compl. ¶¶ 5, 51-61.) He alleges that Defendants, in their individual capacities, have violated his right to a hearing (Count 1), right to an impartial decision maker (Counts 2 & 10), right to be notified of evidence used against him (Counts 3 & 9), right to confrontation

---

[2] The Amended Complaint is the operative complaint in this matter. *See* Fed. R. Civ. P. 15(a). Accordingly, the Court dismisses Defendants' Motions to Dismiss the Complaint [Doc. Nos. 23, 30] as moot.

5

(Count 4), right to discovery (Count 5), right to a timely decision (Counts 6 & 7), and right to have decisions based on the record (Count 8), along with other "rights under the Constitution" and "equal protection of the laws" (Count 11). (*Id.* at 51-61.) In liberally construing the Amended Complaint, *see Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), the Court analyzes the Plaintiff's claims as alleged violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. He seeks compensatory damages only. (*See* Am. Compl. ¶ 61.)

In response, Defendants move to dismiss the Amended Complaint. They seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Defs.' Mem. [Doc. No 43] at 7-14; Cunningham Mem. [Doc. No. 50] at 2-6.) First, they allege that the Court lacks subject-matter jurisdiction over the claims under the *Rooker-Feldman* doctrine. (Defs.' Mem. at 7-9; Cunningham Mem. at 5-6.) Alternatively, the Board and McGillic assert that they have judicial immunity and that Ristow's claims fail as a matter of law. (Defs.' Mem. at 11-14.) Likewise, Cunningham alternatively argues that Ristow's § 1983 claims fail because there are no factual allegations that she acted under color of state law. (Cunningham Mem. at 3-4.) In addition, she contends that Ristow's § 1985 claims fail. (*Id.* at 4-5.)

## II.   DISCUSSION

### A.   Rule 12(b)(1)

#### 1.   Legal Standard

Rule 12(b)(1) states that a party may move to dismiss a claim for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b). Defendants argue that the *Rooker-Feldman*

doctrine deprives this Court of subject-matter jurisdiction on the face of the Amended Complaint. As such, the Court's review is restricted to "the face of the pleadings" and "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

### 2. Analysis

The *Rooker-Feldman* doctrine is named after two Supreme Court cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, the Supreme Court held that appellate jurisdiction over state-court judgments is a power reserved by Congress to the Supreme Court alone. 263 U.S. at 415-17; *see also* 28 U.S.C. § 1257. Sixty years later, the court affirmed *Rooker*. *See Feldman*, 460 U.S. at 486. In *Feldman*, the Supreme Court explained that a state court's determination regarding an individual's admission to that state's bar constitutes a judicial proceeding. *Id.* at 478, 480-81, 486-87. Because it is a state judicial determination, federal review of such a decision resides only with the Supreme Court. *Id.* at 486. Put differently, a federal district court does not have jurisdiction over challenges to a state-bar admission decision, "even if those challenges allege that the state court's action was unconstitutional." *Id.*

The Eighth Circuit has applied the *Rooker-Feldman* doctrine to hold that a district court lacks subject-matter jurisdiction over an admission decision made by members of Minnesota's Board of Law Examiners. *LaNave v. Minnesota Supreme Court*, 915 F.2d 386, 387 (8th Cir. 1990). In *LaNave*, plaintiff sought admission to the Minnesota Bar, even

7

though he had not graduated from an accredited law school, which was a requirement for admission. *Id.* Thus, he petitioned for waiver of that requirement. *Id.* The Board denied the waiver and therefore did not admit him to the Minnesota Bar. *Id.* In response, plaintiff sued the members of the Board, alleging, among other claims, violations of his Fourteenth Amendment rights. *Id.* He sought compensatory damages and declaratory and injunctive relief. *Id.* The district court dismissed plaintiff's constitutional claims arising from the Board's decision, citing the *Rooker-Feldman* doctrine, and the Eighth Circuit affirmed. *Id.*

As in *LaNave*, this Court lacks subject-matter jurisdiction over Ristow's constitutional challenges here. Ristow alleges violations of his rights under the Fourteenth Amendment arising from the Board's denial of his admission to the Minnesota Bar. He attempts to avoid the application of the *Rooker-Feldman* doctrine by asserting constitutional challenges and limiting his damages to monetary relief. Limiting his remedy, however, does not avoid the application of the doctrine. This is because Ristow is effectively appealing the Board's decision. *See Leekley-Winslow v. Minnesota*, Case No. 19-cv-2071 (NEB/HB), 2020 WL 2100856, at *3 (D. Minn. Mar. 30, 2020), *R. & R. adopted*, 2020 WL 2097620 (D. Minn. May 1, 2020) ("Although his claims are styled as constitutional challenges, they are, in effect, an appeal by Plaintiff of the Minnesota state court's judgment."); *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996) (affirming application of *Rooker-Feldman* doctrine where, if the court held in favor of plaintiff's constitutional challenges, "that holding would 'effectively nullify' the state court's judgment"); *see also Trapp v. Gunn*, No. 21-3726, 2022 WL 4137726, at *1 (8th Cir. Sept.

13, 2022) (applying *Rooker-Feldman* as to plaintiff's claims arising from the suspension of his license to practice law and related licensing and disciplinary proceedings).

### B. Rules 12(b)(6)

Even if the Court had subject-matter jurisdiction, Ristow's allegations fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

#### 1. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (quotation marks and citation omitted). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."[3] *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quotation marks and citation omitted).

---

[3] The Court has considered the Amended Complaint and exhibits that were attached to the original Complaint but were not attached to the Amended Complaint, along with

9

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must allege facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### 2. Analysis

Ristow has sued individual members of the Board, namely, Peterson, Boyd, Hoyos, Koneck, Kuppe, Monahan, Prince, Thein, Wong, Martens, Wacker, and Karn, along with McGillic and Cunningham, in their individual capacities, alleging claims for constitutional violations under 42 U.S.C. §§ 1983 and 1985, and seeks monetary relief. The Court considers each claim in turn.

---

additional excerpts of the hearing transcript submitted by Plaintiff. The Court finds that the exhibits and the additional excerpts are necessarily embraced by the pleadings in this case because they are referenced by the Amended Complaint and their authenticity is undisputed. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." (internal quotation marks and citations omitted)); *Cullars-Doty v. City of St. Paul*, Civ. No. 21-cv-94 (NEB/ECW), 2021 WL 5868202, at *12 (D. Minn. Dec. 10, 2021) (finding 911 transcript necessarily embraced by the pleadings because it was referred to in the complaint and no one disputed its authenticity).

        **a.**        **Ristow's § 1983 Claims**

        **(i)**        **The Members of the Board**

The members of the Board contend that they are protected by judicial immunity. (Defs.' Mem. at 11-12.) The Court agrees.

The doctrine of judicial immunity is well-settled. *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976). The doctrine provides "absolute immunity from all claims relating to the exercise of judicial functions." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 433 n.8 (1993). The Supreme Court has explained that providing judicial immunity is in the best interests of the administration of justice because it allows judicial officers, in exercising their authority, to be "free to act upon [their] own convictions, without apprehension of personal consequences." *Stump v. Sparkman*, 435 U.S. 349, 363 (1978) (internal quotation marks and citation omitted). It is important that a judge can act without fear of a lawsuit, especially in controversial matters. *Id.* at 364.

In the Eighth Circuit, "[a] judge is absolutely immune from liability if (1) the judge had subject matter jurisdiction, and (2) the acts complained of were judicial acts." *Childs v. Reynoldson*, 777 F.2d 1305, 1306 (8th Cir. 1985) (internal quotation marks and citation omitted). The immunity extends to suits seeking money damages. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). The Eighth Circuit has applied judicial immunity—sometimes referred to as quasi-judicial immunity—in cases involving state-bar admission decisions. *See LaNave*, 915 F.2d at 387 (8th Cir. 1990) (holding that members of the Minnesota Board of Law Examiners were protected by quasi-judicial immunity from damages "in administering the bar admission process"); *Childs*, 777 F.2d

11

at 1306 (holding that the members of the Iowa Board of Law Examiners were entitled to absolute quasi-judicial immunity for the act of denying admission to practice law in Iowa).

The Minnesota Supreme Court has the authority to "appoint a Board of Law Examiners." Minn. Stat. § 481.01. The Board is "charged with the administration of the rules and with the examination of all applicants for admission to practice law." *Id.* The Eighth Circuit has held that when the Minnesota Board of Law Examiners makes an admission decision, it is engaging in a judicial act. *See LaNave*, 915 F.2d at 387 ("[T]he board members were entitled to absolute quasi-judicial immunity because they acted on behalf of the court in administering the bar admission process.").

Plaintiff argues that judicial immunity does not bar these claims because he has sued the Board members in their individual capacities. (*See* Pl.'s Opp'n [Doc. No. 55] at 2-3.) But that argument misses the point. This Court's analysis turns on whether the alleged acts are judicial—not on whether Plaintiff has sued the actors in their official or individual capacities. *See Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) ("Absolute immunity flows not from rank or title or 'location within the Government' . . . but from the nature of the responsibilities of the individual official."). For example, in *Childs*, despite being sued "as individuals," the district court found that the members of the Iowa Board of Examiners "acted as an arm of or surrogate for the Supreme Court of Iowa," and thus "the individuals involved in various roles in administering the bar examination [we]er entitled to absolute quasi judicial immunity." *Childs v. Reynoldson*, 623 F. Supp. 135, 136-37 (S.D. Iowa 1985). The Eighth Circuit affirmed the district court's determination, noting that the immunity protects "persons who administer bar examinations and judge the fitness of

applicants to practice law." *Childs*, 777 F.2d at 1306 (citing *Richardson v. McFadden*, 563 F.2d 1130, 1132 (4th Cir. 1977)). Therefore, the Court must determine whether the Board's alleged acts are judicial in nature.

Ristow has alleged that the Board members engaged in the following conduct:

- They reviewed Ristow's application and issued the Denial "without having heard from the Plaintiff," (Am. Compl. ¶ 51);

- They participated in Ristow's appeal of the Denial and issued a Final Decision, after having already issued the Denial, (*Id.* ¶ 52);

- They requested a secret affidavit from Cunningham and then relied on that affidavit "without giving Plaintiff notice of said affidavit" and "without giving Plaintiff an opportunity to respond," (*Id.* ¶¶ 53-55);

- They took over 15 months to issue the Denial, (*Id.* ¶ 56);

- They took over eight months to issue the Final Decision, (*Id.* ¶ 57);

- They substantiated the Final Decision with "intentionally false misrepresentations of statements made by Plaintiff," (*Id.* ¶ 58);

- They improperly used electronic devices during the hearing to search for information on which to question plaintiff during the hearing, (*Id.* ¶ 59);

- They failed to recuse themselves from the appeal process despite Ristow's request, (*Id.* ¶ 60); and

- They facilitated and considered the Cunningham affidavit despite Ristow's notification that it contained false information, (*Id.* ¶ 61).

Because all of the allegations relate solely to the Board's decision whether to admit him to the Minnesota Bar, they are properly judicial acts under Eighth Circuit precedent. *See LaNave*, 915 F.2d at 387 (holding that "administering the bar admission process" was a judicial act); *see also Childs*, 777 F.2d at 1306. Accordingly, the Board members have quasi-judicial immunity in this matter.

In seeking a different result, Ristow argues that judicial immunity does not apply because his allegations only relate to the Board's character and fitness investigation. (Pl.'s Opp'n at 2-3, 13.) However, Plaintiff's argument is a distinction without a difference. Plaintiff asserts that his rights were violated during the Board's process of determining whether to admit him to the Minnesota Bar. In this circuit, such a determination constitutes a judicial act. *See LaNave*, 915 F.2d at 387 (holding that board members were entitled to absolute quasi-judicial immunity "in administering the bar admission process"). There is no serious dispute here that the character and fitness determination is part of the bar admission process.

For these reasons, the Court grants dismissal of Plaintiff's § 1983 claims as to the individual members of the Board, namely, Peterson, Boyd, Hoyos, Koneck, Kuppe, Monahan, Prince, Thein, Wong, Martens, Wacker, and Karn.

### (ii) McGillic

McGillic is also immune from Plaintiff's § 1983 claims. The United States Supreme Court has extended judicial immunity to prosecutors engaging in prosecutorial activity. *Imbler*, 424 U.S. at 427-29. In *Imbler*, the court held that state prosecuting attorneys who act within the scope of their duties have immunity from suit under § 1983 for alleged constitutional rights violations. *Id.* at 428-29. The court explained that prosecutors cannot be "constrained in making every decision by the consequences in terms of his [or her] own potential liability in a suit for damages." *Id.* at 424-25. Every case involves questions regarding "[t]he prosecutor's possible knowledge of a witness' falsehoods, the materiality of evidence not revealed to the defense, the proprietary of a closing argument, and

ultimately . . . the likelihood that prosecutorial misconduct so infected a trial as to deny due process." *Id.* at 425.  But these concerns, the Supreme Court reasoned, are appropriately raised in post-trial motions, where the court can address whether a litigant received a fair trial.  *Id.* at 427.

Similarly, the Eighth Circuit has applied immunity to a state prosecutor acting on behalf of a licensing board.  *Zar v. S. Dakota Bd. of Examiners of Psychologists*, 976 F.2d 459, 462, 466-67 (8th Cir. 1992).  In *Zar*, the South Dakota Board of Examiners of Psychologists revoked the license of plaintiff.  *Id.* at 462-64.  After following the appeal process, plaintiff sued the individual board members for violations of his federal due process rights "in their decision to revoke his license."  *Id.* at 464.  Plaintiff also sued an attorney hired by the Board of Examiners to litigate at the administrative hearing.  *Id.* at 462, 466.  The Eighth Circuit explained that the attorney was "protected by absolute immunity" for his actions of "presenting evidence at the administrative hearing, of filing and amending the notice of formal action, and of pursuing the appeal."  *Id.* at 466.

Like the attorney in *Zar*, McGillic has absolute immunity here.  In liberally construing the Amended Complaint, the only allegations before the Court are that, during the hearing, McGillic made arguments, (Am. Compl. ¶ 37), asked questions, (Tr. at 45-56), and introduced exhibits, (Tr. at 51).  These are elementary roles of a prosecutor and McGillic's exercise of discretion in carrying out these functions is protected by absolute immunity.

### (iii) Cunningham

Cunningham argues that Ristow has failed to plausibly plead a claim against her under 42 U.S.C. § 1983. (Cunningham Mem. at 3-4.) The Court agrees.

Section 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and the laws of the United States" and show that the alleged deprivation was committed by "a person acting under color of state law." *Yassin v. Weyker*, 39 F.4th 1086, 1089 (8th Cir. 2022) (internal quotation marks and citation omitted). Whether a person acted under color of state law is a legal question. *Id.*

Here, Ristow alleges that Cunningham spoke with Defendant Wacker when called on the telephone. (Am. Compl. ¶20.) He also alleges that Wacker asked Cunningham to submit a "secret" and "salacious" affidavit, which she allegedly did. (*Id.* ¶¶ 1-2, 20, 23.) Lastly, Ristow alleges that Cunningham testified at the hearing. (*Id.* ¶¶ 41, 43, 49-50.)

The Court finds that these allegations fail to demonstrate, as a matter of law, that Cunningham acted under color of state law. The Eighth Circuit has confirmed that "witnesses do not act under color of state law." *Ruffalo by Ruffalo v. Civiletti*, 702 F.2d 710, 716 (8th Cir. 1983) (citing *Bennett v. Passic*, 545 F.2d 1260, 1263-64 (10th Cir. 1976)). In *Bennett*, the Tenth Circuit explained that witnesses do not act under color of

16

state law because it is the trial judge alone who has "the duty and power to determine what portions of the witnesses' testimony should be admitted or excluded." 545 F.2d at 1264. So too here. It was Wacker who called Cunningham and then encouraged her to file the affidavit. Similarly, it was the Board that determined the amount of weight to give to her affidavit. And it was also the Board that decided what portions of Cunningham's testimony to rely on in reaching its ultimate decision. As such, Ristow has not plausibly pleaded that Cunningham acted under color of state law here.

But even assuming that she did, the Amended Complaint does not sufficiently allege which constitutional right Ristow believes Cunningham violated. The allegations in the Amended Complaint refer to procedural due process and equal protection violations during the adjudication of his bar application. Because Ristow does not allege that Cunningham had any authority in relation to that decision, his claims against her cannot stand. Accordingly, the Court finds that Plaintiff's § 1983 claims against Cunningham must be dismissed.

      b.  **Ristow's § 1985 Claims**

Plaintiff generally cites 42 U.S.C. § 1985 as a basis for his claims. (Am. Compl. ¶ 5; Pl.'s Cunningham Opp'n [Doc. No. 56] at 27.)

Section 1985 is a conspiracy statute. *See generally* 42 U.S.C. § 1985. To establish a conspiracy under § 1985, Ristow must prove: 1) the existence of a conspiracy; 2) a purpose in the conspiracy to deprive him of his civil rights; 3) an act in furtherance of the conspiracy; and 4) injury. *R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149*, 894 F. Supp. 2d 1128, 1144 (D. Minn. 2012). The second element requires a showing of some

"class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 1145 (internal quotation marks and citations omitted); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993) (requiring a showing of "class-based, invidiously discriminatory animus").

Plaintiff has not alleged any particulars on how any of the Defendants agreed to violate his rights. Nor did he plausibly allege facts of any discriminatory animus. In fact, he did not even use the word "conspiracy" in his Amended Complaint. Accordingly, Plaintiff's 42 U.S.C. § 1985 claims are dismissed as to all Defendants.

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions to Dismiss the Complaint [Doc. Nos. 23, 30] are **DENIED** as moot;

2. Defendants' Motions to Dismiss the Amended Complaint [Doc. Nos. 41, 48] are **GRANTED;** and

3. The Counts in the Amended Complaint are **DISMISSED** with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: September 14, 2022                           s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge